STATE OF NORTH CAROLINA v. WILLIE RAY ARTIS

No. 63

(Filed 3 November 1981)

**Criminal Law § 75.6— failure to repeat Miranda warnings—sufficiency for second confession**

Defendant's second statement was properly admitted into evidence where the evidence tended to show that defendant was apprehended near his wife's burning residence and taken to the police station for questioning; that he admitted a hit-and-run offense shortly after being advised of his *Miranda* rights but denied any act of arson; that the officer who took defendant's statement went to defendant's wife's residence and detected the odor of gasoline; that the officer returned to the station approximately three hours after defendant's first statement and said the fire was started by gasoline and that he detected the odor of gasoline on defendant's hands; and that defendant then gave the second statement admitting arson without being again advised of his *Miranda* rights. Factors supporting the trial court's conclusion that both statements were voluntarily made with full knowledge of his constitutional rights include the facts that: (1) there was only three hours time between the warnings and a second statement, (2) the second statement was given at the same place as the first, (3) the second statement was given to the same officer, and (4) the second statement was not inconsistent with the first statement.

BEFORE *Tillery, Judge*, at the 2 March 1981 Session of Superior Court, LENOIR County. Defendant was convicted of arson and appeals as a matter of right from the sentence of life imprisonment.

*Attorney General Rufus L. Edmisten, by Deputy Attorney General William W. Melvin and Assistant Attorney General William B. Ray, for the State.*

*Fred W. Harrison for the defendant.*

CARLTON, Justice.

Defendant confessed to the crime with which he was charged in a statement to law enforcement authorities approximately three hours after a statement to the same officers in which he denied committing the crime. He was given his *Miranda* warnings prior to his first statement, but they were not repeated prior to the second statement. The sole assignment of error presented by this appeal is whether the trial court erred in admitting the second statement, in which defendant confessed to arson, into

evidence over his objection. Defendant contends that the admission of his purported confession was error because the *Miranda* warnings were not repeated prior to his second statement. At trial, defendant denied that he made the second statement.

## I.

Defendant was tried on an indictment, proper in form, alleging that he feloniously set fire to and burned the dwelling house inhabited by his wife, Melba Jean Williams Artis, and others on 2 January 1981. Evidence for the State tended to show that defendant went to the home of his estranged wife at 608 North East Street in Kinston on the night of 1 January 1981. He brought some Christmas presents for his two sons and stayed about thirty minutes. While he was there, defendant and his wife began arguing and he pulled a knife and threatened her. She fled to an adjacent apartment and asked a neighbor to call the police. Defendant left his wife's residence, and, in doing so, struck and damaged her automobile. His wife reported the hit-and-run accident to the police and she and the children thereafter retired for the evening. Mrs. Artis awoke around 4:00 a.m. the following morning and realized that the house was on fire. She awakened the other occupants and they escaped without injury.

Later that morning, defendant was apprehended near his wife's burning residence and was taken to the police station in Kinston for questioning. A police officer advised him of his *Miranda* rights and defendant signed a waiver of his rights at approximately 6:35 a.m. on 2 January 1981. At that time defendant gave the officers a statement detailing his activities that evening, including an admission that he hit his wife's car, but he did not admit any act of arson. According to defendant, the reason he was near his wife's home at the time of the fire was that he was returning to tell her that he had hit her car. When he got near the house, he saw the fire engines. A policeman stopped him and he was arrested for the hit-and-run. His statement was completed at approximately 7:35 a.m.

Officer Heath, the officer who took defendant's statement, then left defendant at the police station in the custody of other officers and returned to the scene of the fire for further investigation. He detected an odor of gasoline in the soil underneath the house, obtained soil samples for analysis by the state laboratory,

and, after further investigation, returned to the police station. Officer Heath advised defendant that the fire had been set with gasoline and that he detected an odor of gasoline on the defendant's hands. This was approximately three hours following the defendant's first statement, and he was not again advised of his *Miranda* rights. Defendant then gave a second statement to Officer Heath. The second statement recounted some of the details included in the first and included an admission that he had set the fire by placing a rag in the top of a gasoline-filled plastic jug, lighting the rag, and throwing the jug underneath the house.

The State also presented evidence that the fire had been started underneath the house by igniting gasoline contained in a plastic jug.

Defendant himself took the stand and explained his activities that evening and early morning. His testimony essentially corroborated the version of events contained in his first statement. He denied setting the fire and also denied that he had made a second statement to the police officers.

The jury convicted defendant of arson, and he was sentenced to life imprisonment. He appeals to this Court as a matter of right.

II.

Defendant strenuously contends that the trial court erred in admitting the second statement because he was not informed of his *Miranda* rights immediately prior to making that statement and because the original warnings had been diluted by the passage of time and the techniques employed by the police officers in obtaining the second statement. Officer Heath testified that one police officer told another in defendant's presence that he should "wrap this matter up" and get on with a murder case. This technique was frequently used by the Kinston police to elicit statements from defendants.

Upon objection of defendant to testimony concerning the second statement, the trial court conducted a voir dire. On voir dire, Officer Heath testified that upon his return from the scene of the fire, he informed defendant that the fire had been deliberately set with gasoline and that he smelled gasoline on defendant's hands. At that point, according to Officer Heath, defendant said he wish-

ed to make an additional statement. Although defendant overheard another officer say that they should wrap this matter up and move on to more important business, at no time was he asked to make another statement. Defendant testified on voir dire that he had initially waived his rights and understood that he did not have to make a statement and that no one had done anything to cause him to believe that those rights no longer applied. He also testified that Lieutenant Green and Heath had told him that if he wanted to see his kids, he should go ahead and tell the truth. However, defendant denied that he had made a second statement although he admitted that the signature on the purported confession was his.

Based on this testimony, the trial judge found that defendant had been fully advised of his constitutional rights and that he had voluntarily waived them, that no threats, promises or duress were employed to obtain the second statement, nor was defendant under the influence of any intoxicants. The court concluded that both statements were voluntarily made by defendant with full knowledge of his constitutional rights.

This Court has considered on numerous occasions whether *Miranda* warnings must be repeated at subsequent interrogations when they have been properly given and waived at the initial one. In *State v. McZorn,* 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence vacated,* 428 U.S. 904 (1976), Chief Justice Sharp, citing the cases and authorities from other jurisdictions, enunciated the rule now well established in this jurisdiction:

> [A]lthough *Miranda* warnings, once given, are not to be accorded "unlimited efficacy or perpetuity," where no inordinate time elapses between the interrogations, the subject matter of the questioning remains the same, and there is no evidence that in the interval between the two interrogations anything occurred to dilute the first warning, repetition of the warnings is not required. [Citations omitted.] However, the need for a second warning is to be determined by the "totality of the circumstances" in each case. [Citation omitted.] "[T]he ultimate question is: Did the defendant, with full knowledge of his legal rights, knowingly and intentionally relinquish them?"

*Id.* at 433-34, 219 S.E. 2d at 212 (quoting *Miller v. United States,* 396 F. 2d 492, 496 (8th Cir. 1968), *cert. denied,* 393 U.S. 1031 (1969) ).

*McZorn* recognized that the following factors should be considered in determining whether the initial warnings have become so stale and remote that there is a substantial possibility the individual was unaware of his constitutional rights at the time of the subsequent interrogations: (1) the length of time between the giving of the first warning and the subsequent interrogation; (2) whether the warnings and the subsequent interrogation were given in the same or different places; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers; (4) the extent to which the subsequent statements differed from any previous statements; and (5) the apparent intellectual and emotional state of the suspect.

Defendant here contends that the initial warnings had been diluted by the passage of an inordinate amount of time and the use of a ruse to elicit a confession. We cannot agree. First of all, we are unwilling to establish the rule that the passage of three hours after the *Miranda* warnings have been given is sufficient, by itself, to require that they be repeated. The amount of time between the giving of of the warnings and the making of the challenged statement is only one factor among many to be considered. Nor do we think that the statement that the police should move on to more important matters, even in combination with the passage of time, is enough to show that the initial warnings had been so diluted that there existed at the time of the second statement a substantial probability that defendant was unaware of his rights. *See State v. Simpson,* 297 N.C. 399, 255 S.E. 2d 147 (1979); *State v. Garrison,* 294 N.C. 270, 240 S.E. 2d 377 (1978); *State v. Small,* 293 N.C. 646, 239 S.E. 2d 429 (1977); *State v. Cole,* 293 N.C. 328, 237 S.E. 2d 814 (1977). Additionally, assuming that such a statement is sufficient to amount to an interrogation, the other factors making up the totality of the circumstances support a conclusion that the confession was freely and voluntarily made. The subsequent statement was given at the same place as the first, was made to the same officer and was not inconsistent with the first statement. His second statement merely was an extention of the first and admitted the crime. There was no evidence presented at the voir dire which would support the inference that defendant was so intellectually deficient or emotionally unstable that he had forgotten or was unaware of his constitutional rights.

The assignment of error presented by defendant is overruled for the reasons stated above. In the trial below, we find

No error.